**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William R. HALL, Defendant–Appellant.**

Nos. 96–1909, 96–1928.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1996.

Decided Dec. 2, 1996.

Timothy O'Shea (argued), Office of the United States Attorney, Madison, WI, for Plaintiff-Appellee.

Alan G. Habermehl (argued), Reynolds, Thomas, Kelly & Habermehl, Madison, WI, for Defendant-Appellant.

Before POSNER, Chief Judge, WOOD, JR., and ESCHBACH, Circuit Judges.

ESCHBACH, Circuit Judge.

Pursuant to a plea agreement, Defendant Hall pled guilty to one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The charge resulted from Hall's role in the initially successful—but later uncovered—attempt to smuggle methamphetamine into the federal prison where Hall was serving time for armed robbery. At sentencing, the district judge applied the 1994 Sentencing Guidelines[1] to increase Hall's base offense level on two grounds: 1) Hall's managerial role in the conspiracy; and 2) obstruction of justice. Hall appeals each increase. Because neither enhancement was clearly erroneous, we affirm the sentence.

---

1. Because the sentencing occurred in 1995, use of the 1995 version of the Guidelines would normally be proper. U.S.S.G. § 1B1.11. However, the 1995 version adds an increase in offense level for introducing an illegal drug into a federal correctional institution which would raise *ex post facto* concerns in this case. Therefore, use of the 1994 version of the Guidelines, which was in effect at the time of the offense, is proper.

## I.

Sometime in January 1995, in part to pay off their prison debts, defendant William Hall, Berry Keeter and Dares Park agreed to smuggle one ounce of methamphetamine into Oxford Federal Correctional Institution ("FCI–Oxford") in Oxford, Wisconsin, where the three were incarcerated for various prior offenses. Once inside, the drug would be split among the three inmates who would then sell, use, or otherwise distribute the drug. To accomplish this plan, Hall enlisted the aid of his girlfriend on the outside, Kim Maxwell.[2] The division of labor was as follows: Park financed the drug purchase; Keeter located a seller on the outside (Paul Ahrens); Ahrens procured, sold, and mailed the drugs to Maxwell; Maxwell introduced the drugs into the prison; and Hall directed Maxwell in her courier efforts and smuggled the drugs into FCI–Oxford.[3] Ahrens' purchase and delivery of the drugs to Maxwell went smoothly. During a visit with Hall on April 8, 1995, Maxwell brought the drug-filled balloons into FCI–Oxford concealed under her blouse, transferred the balloons into a bag of popcorn, and watched as Hall swallowed each of the fourteen balloons for later retrieval.

Hall's problems began a short time later when only 12 of the 14 balloons emerged from his smuggling route intact. Although the methamphetamine in the 12 remaining balloons was distributed evenly among Hall, Keeter and Park, at least one of the balloons broke open during ingestion, apparently causing Hall to overdose on methamphetamine. On April 12, shortly after Maxwell's visit, Hall caught the attention of the correctional officers by barricading himself into his cell and exhibiting loud, irrational behavior. The officers removed Hall from his cell and placed him in a special housing unit, where he underwent two days of psychological and physical testing, including a urinalysis that came back positive for methamphetamine. On April 14, and again on April 17, Hall confessed to the smuggling, use, and distribution of the drugs, and exposed the entire operation in an attempt to avoid additional incarceration. Hall later moved unsuccessfully to suppress both confessions.

Hall pled guilty to one count of conspiracy to distribute a controlled substance and was sentenced to 162 months in prison. The term included a three-point upward enhancement for his managerial role in the offense, and a two-point upward enhancement for obstruction of justice resulting from perjured testimony at Hall's suppression hearing. Hall appeals both enhancements, and we hear his appeal under the jurisdiction granted in 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## II.

### A. Role in the Offense Enhancement

Under § 3B1.1(b) of the United States Sentencing Guidelines, the sentencing judge may increase the base offense level by three if the defendant was a "manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." Hall points to two reasons why the district court's application of this section to increase his base offense level was in error: 1) Hall did not play a managerial or supervisory role sufficient to invoke the section; and 2) the requirement of five or more "participants" was not met.

 Although a district court's interpretation of the Sentencing Guidelines is reviewed *de novo*, its findings of fact at sentencing are reviewed for clear error. *United States v. Young*, 34 F.3d 500 (7th Cir.1994). Whether a defendant exercised a managerial role in the charged offense is a factual determination that we review under the clearly erroneous standard. *United States v. Billops*, 43 F.3d 281, 287 (7th Cir.1994); *United States v. Skinner*, 986 F.2d 1091, 1095 (7th Cir.1993). Likewise, a district court's determination of the number of participants involved in the charged offense is a factual finding also subject to reversal only upon clear error. *United States v. Morgano*, 39

---

**2.** Apparently an unimaginative scheme at FCI–Oxford. *See United States v. Feekes*, 929 F.2d 334 (7th Cir.1991).

**3.** Hall and Maxwell were the only two participants named in the indictment.

F.3d 1358, 1379 (7th Cir.1994); *United States v. McKenzie,* 922 F.2d 1323, 1329 (7th Cir. 1991). A finding of fact is clearly erroneous only if, after reviewing the evidence before the district court, the appellate court is left " 'with the definite and firm conviction that a mistake has been committed.' " *Anderson v. Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

▮ Hall first argues that a § 3B1.1(b) increase was improper because Hall did not play a managerial role in the conspiracy. To qualify for an increase under § 3B1.1(b), a defendant must have exerted managerial control over one or more other participants. U.S.S.G. § 3B1.1 comment (n. 2). In *United States v. Mustread,* we noted that "a defendant who had no greater role than any other participant cannot receive a § 3B1.1 increase." 42 F.3d 1097, 1103 (7th Cir.1994). However, a defendant need not have played a greater role than all of the participants; an increase in offense level is supportable when only one participant stands out as being defendant's inferior or under defendant's control. *See United States v. Cotts,* 14 F.3d 300, 309 (7th Cir.1994). Relying on *Mustread,* Hall argues that his relative role was no greater than that of the other participants. In asserting each party's equal role, however, Hall asks us to ignore his recruitment of Maxwell into the conspiracy, and his control of her actions thereafter. This we cannot do: a defendant's "real and direct influence, aimed at furthering the criminal activity, upon one other identified participant," *Mustread,* 42 F.3d at 1103, provides clear support for a managerial role enhancement.

▮ The district court provided its reasoning for imposing the § 3B1.1(b) enhancement at the sentencing hearing. The judge found that Hall played a greater role with respect to at least one other participant: Maxwell. In support of its finding that Maxwell was subordinate to Hall, the court noted that Maxwell was not committed to the success of the conspiracy, but was merely doing Hall's bidding to please him. The record indicates that Hall alone recruited Maxwell into the conspiracy, instructed Maxwell to make calls to Ahrens to arrange delivery of the drugs, and specifically directed Maxwell's procedure for importing the drugs into the prison. Maxwell received none of the illegal booty or other compensation for her assistance, and took no action without Hall's guidance to further the goal of the conspiracy. Indeed, as reflected in the probation officer's presentencing report to the district court, Hall himself admitted that Maxwell only did as he directed. On this record, the district court found that Hall's recruitment and direction of Maxwell supported a three-level enhancement under § 3B1.1. This finding is far from clearly erroneous. *See United States v. Feekes,* 929 F.2d 334 (7th Cir.1991); *United States v. Adipietro,* 983 F.2d 1468 (8th Cir. 1993); *United States v. Pierce,* 893 F.2d 669 (5th Cir.1990).

Hall then argues that § 3B1.1(b) is inapplicable because the offense of his conviction involved four, not five, participants. Hall, Park, Keeter, and Maxwell's participation is undisputed. Hall, however, views Ahrens' role as that of a mere seller to the conspiracy, not a co-conspirator, and contends that if Ahrens is not a co-conspirator, he cannot qualify as a "participant" in the scheme. The government argues that Ahrens could indeed be considered a co-conspirator. This particular point and counterpoint is unnecessary. We need not find that Ahrens was a co-conspirator to find his participation sufficient under § 3B1.1.

▮ The Sentencing Guidelines define "participant" in part as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment (n. 1). Here, the charged offense was conspiracy to distribute methamphetamine. Although Hall is correct that a party's mere sale of drugs to a conspiracy is insufficient to establish a conspiratorial agreement between a buyer and seller, *United States v. Thompson,* 944 F.2d 1331, 1342 (7th Cir.1991); *United States v. Baker,* 905 F.2d 1100, 1106 (7th Cir.1990), whether Ahrens was a co-conspirator is not ultimately dispositive of his participant status under § 3B1.1. We have never required that a party be a co-conspirator to qualify as a

"criminally responsible" participant under § 3B1.1(b) when the underlying offense was conspiracy. Although a finding that Ahrens was in fact a co-conspirator would clearly satisfy the "criminally responsible" requirement, the term "criminally responsible" is not strictly coterminous with "coconspirator" in conspiracy cases. In *United States v. Tai,* we recognized that mere unknowing facilitators of crime are not criminally responsible participants under § 3B1.1. 41 F.3d 1170, 1174 (7th Cir.1994); *see also United States v. Saulter,* 60 F.3d 270, 281 (7th Cir.1995). However, just as a party who knowingly assists a criminal enterprise is criminally responsible under principles of accessory liability, a party who gives knowing aid in some part of the criminal enterprise is a "criminally responsible" participant under the Guidelines. *See United States v. Brinkworth,* 68 F.3d 633, 641–42 (2d Cir.1995); *United States v. Braun,* 60 F.3d 451, 453 (8th Cir. 1995); *United States v. Boutte,* 13 F.3d 855, 860 (5th Cir.1994); *see also United States v. Lewis,* 68 F.3d 987, 989 (6th Cir.1995) (both principals and aiders and abettors are criminally responsible participants under § 3B1.1).

 The record contains ample evidence from which the district court could find that Ahrens provided knowing aid to the conspiracy. Ahrens had himself once been a comrade in confinement at FCI–Oxford with Hall, Keeter and Park, and knew them personally. Ahrens received at least two phone calls from inside the prison, first from Keeter and then from Hall, asking in code for him to procure and deliver methamphetamine "for the kids." [4] In one of those phone conversations regarding the amount of methamphetamine to be delivered, Ahrens again indicated his understanding that the drugs were to be distributed among several inmates after delivery. Fourth, Ahrens did more than merely deliver the drugs to Maxwell; he packed the drugs into fourteen ingestible balloons to accommodate the smuggling. Hall argues that the evidence only indicates Ahrens' knowledge that the drugs were going to be smuggled into the prison, and that this knowledge is irrelevant to the charged offense of conspiracy to distribute. We disagree. Taken together, this evidence clearly supports the inferences that Ahrens knew the drugs were to be smuggled into the prison, and knew that the drugs would be distributed among at least two of the three inmates—Keeter and Hall. The district court's finding that Ahrens should be counted as a participant because of his knowing aid to the conspiracy is not clear error.

### B. Obstruction of Justice Enhancement

 If the sentencing court determines, by a preponderance of the evidence, that "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense," it may increase the base offense level by two. U.S.S.G. § 3C1.1. Perjury on a material matter is an obstruction of justice under the Guidelines. *United States v. Sinclair,* 74 F.3d 753, 762 (7th Cir.1996); *see also* U.S.S.G. § 3C1.1 comment (n. 3(b)). Hall argues that the record does not establish by a preponderance of the evidence that Hall committed perjury about his condition.

 At sentencing, the district judge increased Hall's offense level under § 3C1.1 because she found that Hall had tried to suppress his confessions by falsely characterizing his physical state at the time of his suppression hearing. At the hearing, Hall testified that his confessions were involuntary because they were the product of his alleged methamphetamine-induced psychosis. Countering Hall's testimony was the testimony of the officers who accepted Hall's confessions, neither of whom noticed any unusual

---

4. Hall, Keeter, and Park used the inmate telephone service ("ITS") to communicate with Ahrens and Maxwell on the outside. This phone system, detailed in *Washington v. Reno,* 35 F.3d 1093 (6th Cir.1994), allows inmates to make outgoing telephone calls to a select group of phone numbers. The inmates are informed that these calls, with the exceptions of calls to counsel, are recorded. Hall and Keeter's communications with Ahrens, captured on these recordings, contain several colorful but nevertheless transparent metaphors for their drug dealing activities-metaphors that reveal Ahrens' knowledge that the drug would be distributed once inside FCI–Oxford.

behavior during the interrogation. In fact, the officers noted Hall's ability to selectively and cautiously answer or avoid questions during the two sessions. The district court also weighed transcript evidence of a telephone call between Hall and Maxwell, made on the same day as the second confession, in which Hall recounted the details of his confession meeting with the officers and reassured her that he would "carry the weight" of the illegal activity for his co-conspirators.

A sentencing judge's finding that a defendant engaged in a willful attempt to provide false testimony is a finding of fact subject to reversal only if clearly erroneous. *United States v. Brown,* 900 F.2d 1098, 1103 (7th Cir.1990) (citing *United States v. Franco–Torres,* 869 F.2d 797, 800 (5th Cir.1989)). Although an enhanced sentence for obstruction of justice is not warranted for a defendant's simple denial of guilt, *United States v. Contreras,* 937 F.2d 1191, 1194 (7th Cir. 1991), the district court weighed the contradictory and largely credibility-based evidence to find that Hall affirmatively painted an untrue picture of his physical state in order to exclude his confessions and dramatically weaken the government's case against him. In light of the evidence of record, and the special deference we accord to factual findings based on credibility, *United States v. Hickok,* 77 F.3d 992, 1007 (7th Cir.1996), we hold that the district court's finding of obstruction was not clearly erroneous, and as such will remain undisturbed. An increase under § 3C1.1 was appropriate.

### III.

Because none of defendant's challenges have merit, the sentence imposed by the district court under the Sentencing Guidelines is AFFIRMED.