108 F.3d 1380
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Max Minh NGUYEN, Defendant-Appellant.
 No. 96-3653.
 United States Court of Appeals, Seventh Circuit.
 Argued March 4, 1997.
Decided March 21, 1997.
 
 Before CUMMINGS, COFFEY and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Defendant Max Minh Nguyen pleaded guilty to conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344, and was sentenced to 10 months' imprisonment. He appeals the sentence on the ground that the district court erred in imposing a two-point enhancement under the United States Sentencing Guidelines (USSG) § 3B1.1 for defendant's managerial role in the offense. A factual finding as to whether defendant exercised a managerial role is reviewed for clear error. US v. Lewis, 79 F.3d 688, 690 (7th Cir.1996). A finding of fact is clearly erroneous only if the appellate court is left "with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer, 470 U.S. 564, 573 (1985) (internal quotations omitted).
 
 
 2
 Section 3B1.1 provides for a two-level increase in the base offense level where the defendant acted as an organizer, leader, manager or supervisor during the criminal activity. USSG § 3B1.1(c). The court looks at factors such as decision-making authority; the nature of participation in the commission of the offense; the recruitment of accomplices; the claimed right to a larger share of the fruits of the crime; the degree of participation in planning or organizing the offense; the nature and scope of the illegal activity; and the degree of control and authority exercised over others. USSG § 3B1.1, app. note 4; United States v. Granado, 72 F.3d 1287, 1290 (7th Cir.1995); United States v. Johnson-Dix, 54 F.3d 1295, 1309 & n. 7 (7th Cir.1995). Without the two-level increase, Nguyen's total offense level would have been 9, with a sentencing range of 6 to 12 months. Instead, the total offense level was 11, and the sentencing range 10 to 16 months.
 
 
 3
 Defendant argues that it was his brother "Dennis"[1] who played a managerial role in the conspiracy. The record does not reveal what role defendant played in the beginning of the conspiracy. Dennis initially recruited the two accomplices. In January 1996, Dennis met codefendants Matthew Roley and Khonesavanh Khamdeng in Peoria, Illinois, at a restaurant where they worked, and soon proposed to them a scheme to make money which would require that Roley and Khamdeng each open a personal checking account at banks in Peoria, from which they would later draw various fraudulent checks on the two accounts, payable to each other. Roley and Khamdeng agreed to participate in the scheme, and each deposited money (provided to them by Dennis) in two new accounts at two different banks. Dennis continued to communicate with them by telephone, until they met again on March 12, 1996.
 
 
 4
 By the time it was clear that defendant had stepped into the picture, he was playing a managerial role in the conspiracy. At that time, Dennis and defendant clearly had the details of the scheme worked out. Whether or not Dennis had more of a managerial role than defendant does not matter, since there can be more than one manager. USSG § 3B1.1, comment n. 3 ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy"); United States v. Salinas, 62 F.3d 855, 862 (7th Cir.1995) (codefendants can both qualify as organizers under § 3B1.1(c), playing different supervisory or managerial roles in the criminal enterprise). Defendant need not play a greater role than all of the participants. US v. Hall, 101 F.3d 1174, 1177 (7th Cir.1996). The key is whether defendant's role in relation to Khamdeng, the only other participant with whom he had significant contact, was that of a manager, leader, supervisor, or organizer.
 
 
 5
 An inquiry concerning a defendant's role in the offense necessarily involves consideration of the defendant's responsibility relative to that of at least one other participant. United States v. Vargas, 16 F.3d 155, 160 (7th Cir.1994). Defendant argues that his relative responsibility was equal to that of the two "subordinate participants." (Appellant's Brief, p. 7)
 
 
 6
 Defendant argues that the meeting of the four coconspirators in Peoria on March 12, 1996, was his "eleventh hour" entry into the conspiracy. (Appellant's brief, p. 10) This argument carries little weight, because the conspiracy existed for only 6 or 8 weeks, and the actual fraudulent conduct did not begin until defendant came into the picture. Moreover, an "11th hour" managerial position is still a managerial position. See United States v. Salinas, 62 F.3d 855, 862 (7th Cir.1995) (rejecting argument that defendant could not be a manager because he was present only during the latter part of the conspiracy; "[t]he amount of time [defendant] occupied the position of organizer or manager does not alter the fact that he held that position"), citing United States v. Dillard, 43 F.3d 299, 307 (7th Cir.1994) (finding that defendant played managerial role is not precluded by the fact that his "tenure in the conspiracy may have been relatively short").
 
 
 7
 During the initial meeting between all four coconspirators on March 12, 1996, defendant said little or nothing to Khamdeng and Roley, although he did speak with his brother in Vietnamese. The next day, Dennis had Khamdeng and Roley sign various checks made payable to each other. The four then split up: Dennis and Roley left in one car to go cash checks; and defendant and Khamdeng left in another car, also to cash checks. They did not see each other again until they were arrested later that day.
 
 
 8
 Defendant had with him a map of Peoria, marked with the branch facilities of the South Side Bank, and a list of the banks' addresses. Defendant instructed Khamdeng to drive to a certain bank. He then gave her a check and told her to go inside and cash it. When Khamdeng returned to the car, she turned the cash over to defendant, who then instructed her to drive to another bank, where they repeated the process. At defendant's instruction, Khamdeng presented eight checks to banks that day, ranging from $960 to $975, and totaling $7,765. Only one bank refused to cash a check at a drive-up window (Khamdeng had earlier cashed a check inside the same facility), and defendant told her not to worry, just go on to the next bank.
 
 
 9
 Finally, after receiving calls from several of the banks that day, the police arrived and arrested defendant and Khamdeng. At the time, defendant was in possession of $7,865. On the same day, the police also arrested Roley, who was in possession of $1,400, and learned that Dennis and Roley cashed seven checks totaling $6,750, and that Dennis gave Roley $200 for each check cashed.
 
 
 10
 Defendant distorts the known activities of the conspirators by attempting to portray himself as an unknowing, near-innocent bystander who happened to help Khamdeng out by giving her directions to the banks, and holding the money for her. The facts do not support this characterization. Without defendant, Khamdeng would have had no idea where to go; when to cash checks and for what amount; what to do when a bank refused to cash a check; and how her activities with defendant would be coordinated with the activities of Dennis and Roley. Nothing in the record suggests that Khamdeng was free to reject defendant's instructions and instead choose banks at random, cash more checks than those defendant gave her, choose the amount of each check, or claim any particular percentage of the proceeds as payment for her services. She took no action without defendant's guidance. See Hall, 101 F.3d at 1177.
 
 
 11
 Defendant also argues that it is not clear whether he would "claim any larger portion" than Khamdeng, because "Khamdeng had no understanding at all as to what, if anything, [defendant] was to be paid for his involvement in this conspiracy." Given the key roles played by defendant and his brother, it would be incredible to believe that Khamdeng and defendant were to split the money evenly, or even to receive equal shares after Dennis took his portion. (And, of course, whether Dennis and defendant were to have equal shares is not relevant, since the question is whether defendant had authority over Khamdeng--not over his brother.) Moreover, when arrested, defendant was in possession of all the cash, and Khamdeng had not yet been paid for her services, which also suggests that defendant's position was superior to that of Khamdeng. The fact that Dennis paid Roley only $200 per check ($1,400 of the $6,750) also suggests that Khamdeng and defendant would not have received equal shares.
 
 
 12
 The record strongly supports the district court's finding that defendant played a managerial role in the one-day check cashing spree.
 
 
 13
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Defendant's brother, who was called "Dennis," was named Chau Nguyen. Defendant was also known as "Bobby," and as Chieu Minh Nguyen