142 F.3d 441
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Michael RICE, Defendant-Appellant.
 No. 97-3576.
 United States Court of Appeals,
Seventh Circuit.
 .
Argued March 4, 1998.
Decided March 12, 1998.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin. No. 97 CR 96, J.P. Stadtmueller, Judge.
 Before Hon. WALTER J. CUMMINGS, Hon. JESSE E. ESCHBACH, Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 Michael Rice was arrested for participating in a scheme to obtain store credit using false identification. He was charged by indictment with possession of no fewer than fifteen unauthorized access devices (credit card account numbers), in violation of 18 U.S .C. § 1029(a)(3), and with unlawful possession of armed forces identification cards, in violation of 18 U.S.C. § 1028(a)(6). After Rice pleaded guilty to both counts, the district court sentenced him to twenty-one months' imprisonment and ordered restitution in the amount of $86,349 41 On appeal, Rice only raises two issues: (1) whether the district court erred in assessing a two-level sentence enhancement for his role as an organizer, leader, manager, or supervisor in the underlying offense; and (2) whether the district court erred in refusing to grant him a two-level reduction for acceptance of responsibility We affirm the sentence imposed by the district court.
 
 
 2
 On May 3, 1997, Rice, Lonzell Foster. Marcus Mason, and Lee Walker drove Rice's Winnebago motor home from Chicago to the American TV store in Oak Creek, Wisconsin Using the name of Jeffrey Bernacci, Foster completed an American TV credit application, entered the store, and applied for credit. As proof of identity, Foster presented a fraudulently manufactured military ID and an Illinois traffic citation When the store clerk became suspicious and began questioning Foster, he got nervous and left the store. The clerk phoned the police, and a store security employee watched Foster enter the Winnebago.
 
 
 3
 When the police arrived, the store employees directed them to the Winnebago that was still parked in the store lot. Rice exited the Winnebago to speak with the police. The police subsequently searched the motor home and discovered a blank Armed Forces identification card; a completed Armed Forces identification card bearing Mason's photograph but the name of John Weaver; plastic laminating pouches; a travel iron; a typewriter; a laptop computer; a Polaroid camera; and two computer printouts with a list of approximately 100 credit card numbers. The police then took the four individuals into custody and contacted the United States Secret Service to assist in the investigation.
 
 
 4
 Mason and Foster agreed to talk to the police. Mason stated that Rice was the ring leader in organizing a false credit card application scheme, and that Rice had called him earlier that day to inform him that a group was driving to Milwaukee to "get some electronic equipment for cheap." Foster admitted that he attempted to apply for credit at American TV using false identification and that Rice was to pay him $100 for every credit application he presented to various stores that was approved. Foster stated that he had participated in two similar credit card schemes with Rice and Walker in November and December of 1996, and that Mason had told him that he, too, previously had worked with Rice and Walker in a similar scheme. Foster also claimed that Rice had a "big stack" of computer printouts containing credit card numbers and corresponding expiration dates.
 
 
 5
 At his sentencing hearing, Rice did not contest the imposition of a two-level increase in his offense level for activity involving more than minimal planning. Over Rice's objection, the court also imposed a two-level increase because he "was an organizer, leader, manager, or supervisor," and the court refused to reduce his sentence level based on his asserted acceptance of responsibility for his actions.
 
 
 6
 We review the district court's findings for clear error. United States v. McClinton, Nos. 96-3143, 96-3206, 96-3229, 135 F.3d 1178, 1998 WL 45206, at * 15 (7th Cir. Feb.6, 1998) (reviewing a district court's finding underlying an enhancement for a defendant's aggravating role); United States v. Zaragoza-Barajas, 123 F.3d 472, 480 (7th Cir.1997) ("The district court's determination as to acceptance of responsibility is highly fact specific and involves the district judge's subjective appraisal of the totality of the defendant's conduct."). "We only overturn a factual finding made at sentencing if our review of the record leaves us with a firm conviction that a mistake has been made." United States v. Ewing, 129 F.3d 430, 433-34 (7th Cir.1997).
 
 
 7
 Initially, Rice argues that the only evidence presented by the government to establish that he was an "organizer, leader, manager, or supervisor" under U.S.S.G. § 3B1.1(c) was the summaries of the statements given by Foster and Mason, which Rice claims is hearsay. Rice claims that this evidence is of insufficient quality and quantity to meet the government's burden of proving that the imposition of the sentence enhancement is warranted. Statement summaries are admissible in sentencing procedures, even if the evidence constitutes hearsay as Rice claims. United States v. Silva, 122 F.3d 412, 416 (7th Cir.1997) Moreover, the district court did not rely solely on Foster's and Mason's statements to determine Rice's role in the scheme. Rice's role in the offense was addressed in detail in the presentence report and his objections to the report. The district court stated that it was relying on the information contained in the entire presentence report and on other evidence gathered in the investigation. The court concluded that there was more than sufficient evidence in the report to conclude that Rice was an organizer, leader, manager, or supervisor, and that Rice's role in the offense was "a no-brainer."
 
 
 8
 To determine whether an enhancement under U.S.S.G. § 3B1.1(c) is appropriate, the court looks at factors such as:
 
 
 9
 the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 10
 United States v. Mankiewicz, 122 F.3d 399, 405 (7th Cir.1997) (quoting U.S.S.G. § 3B1.1, comment. (n. 4)). The determination whether Rice properly is subject to an enhancement under § 3B1.1 is based on all relevant conduct, not just the acts in the count of conviction. United States v. Billingsley, 115 F.3d 458, 465 (7th Cir.1997). Further, it is the role of the district court to make credibility determinations regarding the evidence produced at the sentencing hearing. Silva, 122 F.3d at 416. "Where there are two possible views of the evidence, the fact finder's choice between them is not clearly erroneous." McClinton, 135 F.3d 1178, 1998 WL 45206, at * 15.
 
 
 11
 Rice admitted that he supplied all of the credit card numbers used in the fraudulent credit card scheme, explaining that he obtained the credit card numbers through his prior employment where he took credit card orders over the phone. He did not deny that he provided the information necessary to produce the fraudulent military identification cards. Rice did, however, object to the statements that he personally created the false identification used in the attempt to obtain credit and adamantly denied that he was the ring leader. Rice argues that the evidence presented, at most, portrayed him "as an important member of the group, as the provider of the motor home and some of the materials necessary for the group to carry out its credit fraud scheme (i.e., laptop computer and computer printouts containing credit card numbers)."
 
 
 12
 The district court's finding that "it was Mr Rice who provided much of the acumen that was required to carry [the fraudulent credit card scheme] out" is well-supported by the record Rice provided all of the biographical information and the credit card numbers necessary to create the false identification cards, and he provided the mobile home in which the co-actors based their operations. Rice did not contest that he was linked to credit card schemes involving at least fourteen different stores, for losses totaling at least $86,349.41. Foster, by contrast, was involved in only two prior schemes, and Mason was involved in only one prior scheme. This evidence supports the district court's conclusion that Walker and Rice orchestrated credit card schemes involving numerous other "mules" and that Rice assumed an active role managing or supervising the "mules."
 
 
 13
 Rice need not have been the "ring leader" to have acted as an organizer, leader, manager, or supervisor. See McClinton, 135 F.3d 1178, 1998 WL 45206, at * 15; U.S.S.G. § 3B1.1, comment. (n. 3). "[E]ven if a defendant did not exercise control, an enhancement under § 3B1.1 may apply so long as the criminal activity involves more than one participant and the defendant played a coordinating or organizing role." Billingsley, 115 F.3d at 465 (quoting United States v. Bush, 79 F.3d 64, 67 (7th Cir.1996)). Although Walker may have exercised greater control over the operation, Rice need only have played a greater role than some of the participants, specifically Foster and Mason. United States v. Hall, 101 F.3d 1174, 1177 (7th Cir.1996).
 
 
 14
 Rice also makes the argument that his long-term participation in the scheme is "covered" by the two-level enhancement imposed for more than minimal planning, and, therefore, the court should not also have imposed an enhancement for his aggravated role in the offense. This argument has been rejected previously by this court and virtually every other circuit court that has addressed this issue. United States v. Porretta, 116 F.3d 296, 301 (7th Cir.1997) (citing cases). Furthermore, Sentencing Guideline Application Note 4 to § 1B1.1 specifically states that sentencing adjustments, such as enhancements for more than minimal planning and for an aggravated role, are applied cumulatively. The sentencing enhancements for more than minimal planning and for an aggravated role in the offense relate to "separate and independent sentencing considerations." Id. Therefore, it is proper to consider and apply both sentencing enhancements.
 
 
 15
 Rice next argues that the district court erred in refusing to grant him a sentence reduction under § 3E1.1 for acceptance of responsibility. At the sentencing hearing, the district court stated that Rice had not been totally candid with the court or the probation department. The court expressed its concern that Rice continued to minimize his involvement in the offense, and it gave him a final opportunity to make "a clean breast of things." Through counsel, Rice admitted that he was involved in the fraudulent scheme for at least a year and a half prior to May of 1997 and stated that he took full responsibility for that involvement, but he refused to talk about or name the other people involved in the entire operation. The district court then concluded that based on the information in the presentence report and Rice's statements to the court, Rice had not been forthcoming and had not accepted responsibility within the meaning of the sentencing guidelines.
 
 
 16
 Rice claims that the district court's refusal to grant him a reduction for acceptance of responsibility was improperly based on his refusal to name the individuals involved in the scheme prior to the date of the offense at issue. Under § 3E1.1, a defendant may invoke his right to remain silent regarding relevant conduct not within the scope of the offense of conviction and still be entitled to a sentence reduction for acceptance of responsibility. United States v. Hammick, 36 F.3d 594, 598 (7th Cir.1994). As this court explained in United States v. Brown, 47 F.3d 198, 204 (7th Cir.1995), however, the principle that a defendant need not "come clean" regarding relevant conduct, is not applicable where a defendant affirmatively denies the government's statement of relevant conduct. See also USSG § 3E1.1, comment. (n. 1(a)). If the court determines that the challenged relevant conduct occurred, the defendant is not entitled to an acceptance of responsibility deduction. Brown, 47 F.3d at 204.
 
 
 17
 In United States v. Jones, 52 F.3d 697 (7th Cir.1995), this court rejected an argument similar to Rice's. The defendant in Jones argued that the district court based its finding that she failed to accept responsibility on her refusal to implicate others and to detail criminal conduct beyond the offense of conviction. Id. at 702. However, this court held that the record did not support the defendant's contention. Instead, the district court's decision was properly based on the defendant's failure to acknowledge her involvement in certain aspects of the scheme, despite evidence to the contrary, and the inconsistencies in statements she made at the plea hearing and to the probation officer. Id.
 
 
 18
 Similarly, the present record does not support Rice's claim that the district court's decision was based solely on his refusal to name the others involved in the scheme. The district court stated that its refusal to grant Rice a reduction under § 3E1.1 was based on its finding that Rice had not been forthcoming. In considering whether a defendant has accepted responsibility under § 3E1.1, the district court may consider "whether the defendant has truthfully described and accepted responsibility for [his] role in the offense of conviction." Jones, 52 F.3d at 701; Silva, 122 F.3d at 416. At the change of plea hearing, Rice attempted to minimize his role in the scheme by attempting to portray himself as an unknowing, near-innocent bystander who happened to give the others a ride to Milwaukee, Wisconsin in his Winnebago to attend an outdoor festival that they mistakenly believed was taking place during that time. Although Rice purported to accept responsibility for his actions, he claimed that the entire plan to obtain false credit from American TV was Foster's idea and that he was asleep in the motor home throughout the incident.
 
 
 19
 At the sentencing hearing, the district court provided Rice with an opportunity to convince the court that he truthfully admitted the extent of his involvement in the scheme and to express remorse concerning his conduct. See United States v. Rosalez-Cortez, 19 F.3d 1210, 1218-19 (7th Cir.1994). Although Rice admitted that he was involved in the scheme, he continued to minimize the importance of his role in the scheme. Rice never explained the discrepancies between his statements at the change of plea hearing and his written responses to the probation officer. The record also contains substantial, credible evidence contradicting Rice's denial of his significant role in the scheme. Silva, 122 F.3d at 416. The district court's finding that Rice acted in a manner inconsistent with acceptance of responsibility, therefore, was not clearly erroneous.
 
 
 20
 Moreover, Rice had the burden of proving by a preponderance of the evidence that he was entitled to a sentence reduction under § 3E1.1 Zaragoza-Barajas, 123 F.3d at 480. However, the only evidence Rice presented was that he promptly entered into a plea agreement after his arrest. Entering into a plea agreement, without more, does not necessarily entitle Rice to a downward adjustment. "A defendant who enters a guilty plea is not entitled to an adjustment as a matter of right." Ewing, 129 F.3d at 435. The district court acknowledged his prompt entry into the plea agreement, stating that it would recognize Rice's guilty plea by imposing the minimal sentence within the applicable sentencing range.
 
 
 21
 For the foregoing reasons, we AFFIRM the judgment of the district court.