[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**July 29, 2005**
**THOMAS  K. KAHN**
**CLERK**

No. 04-16034
Non-Argument Calendar

_____

D. C. Docket No. 04-00016-CR-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCUS BENNETT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(July 29, 2005)**

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

Marcus Bennett appeals his 171-month sentence imposed for robbing a bank

and using a firearm during the commission of a robbery, in violation of 18 U.S.C. § 2113(a), (d) and 18 U.S.C. § 924(c). Bennett raises three issues on appeal.

## I.

First, Bennett argues that his Sixth Amendment rights were violated because the district court enhanced his sentence on the basis of facts that were found only by a preponderance of the evidence, instead of by the beyond-a-reasonable-doubt standard required by United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005).

A defendant is permitted to waive certain constitutional rights through a plea agreement, so long as the agreement was made knowingly and voluntarily. Parke v. Raley, 506 U.S. 20, 28–29, 113 S. Ct. 517, 523 (1992); United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). In Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), the Supreme Court specifically stated that a defendant may waive his Sixth Amendment right to be sentenced only on the basis of facts found by the jury or admitted by him. "[N]othing prevents a defendant from waiving his Apprendi rights. When a defendant pleads guilty, the [government] is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." Blakely, 124 S. Ct. at 2541.

Here, the plea agreement signed by Bennett and his counsel specifically stated that Bennett "waive[d] any right to have a jury resolve and decide

2

sentencing issues, including possible enhancements to his sentence, [and] expressly confer[red] upon the court the right to decide any and all sentencing issues by a preponderance of the evidence standard." Bennett does not contend that his waiver was uninformed or involuntary. Therefore, Bennett waived his Sixth Amendment rights and his Booker argument is foreclosed.[1]

## II.

Second, Bennett contends that the district court erred in applying a six-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(3)(C) because one of the robbery victims sustained a permanent or life-threatening injury. The court applied the enhancement because Beverly Conner, one of the bank tellers present during the robbery, suffered a heart attack immediately afterward. Bennett argues that the district court erroneously enhanced his sentence because there was no evidence in the record to suggest that the teller's injury was either permanent or life-threatening. We disagree.

"This Court reviews the district court's application of the sentencing

---

[1] There are two types of Booker error. The first is the constitutional error, which Bennett waived his right to challenge in his plea agreement. The second is the statutory error of "misappl[ing] the guidelines by considering them as binding as opposed to advisory." United States v. Shelton, 400 F.3d 1325, 1330–31 (11th Cir. 2005). Because Bennett filed his brief after the Supreme Court issued its decision in Booker and he argues only constitutional error, however, we need not consider whether there was statutory error in this case. See United States v. Silvestri, 409 F.3d 1311, 1338 n.18 (11th Cir. 2005) ("[A]n issue not raised in a party's initial appellate brief is considered waived . . . .").

3

guidelines <u>de novo</u> and its findings of fact for clear error." <u>United States v. Grant</u>, 397 F.3d 1330, 1332 (11th Cir. 2005). "The severity of a victim's injuries is a factual determination and thus reviewed for clear error." <u>United States v. Price</u>, 149 F.3d 352, 353 (5th Cir. 1998). "[W]e will not find clear error unless our review of the record leaves us with the definite and firm conviction that a mistake has been committed." <u>United States v. White</u>, 335 F.3d 1314, 1319 (11th Cir. 2003) (internal marks omitted).

The sentencing guidelines provide for a six-level enhancement if any victim of a robbery sustains a "[p]ermanent or life-threatening bodily injury." U.S.S.G. § 2B3.1(b)(3)(C). "Permanent or life-threatening bodily injury" is defined as "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." <u>Id.</u> § 1B1.1, cmt. n.1(J). We have said that this language "encompasses injuries that may not be terribly severe but are permanent, hence the disjunctive: 'permanent or life-threatening injuries.'" <u>United States v. Torrealba</u>, 339 F.3d 1238, 1246 (11th Cir. 2003).

We discern no clear error in the district court's determination that Conner's injury was "permanent or life-threatening," as defined by the guidelines. The

4

record shows that immediately following the robbery Conner suffered a heart attack and had to be taken by ambulance to the hospital. She was hospitalized for four days and had to undergo a cardiac catheterization. Conner's treating physician indicated that her injuries are permanent; she will require a lifetime of medical care because of her heart attack. Conner stated that, as a result of the heart attack, she has to take four different medications and will have to continue doing so for the rest of her life.

Although Conner's heart attack was (fortunately) not as serious as it could have been, it has permanently affected her health. Furthermore, given that heart attacks are often fatal, we see no error in the district court's conclusion that even a relatively minor heart attack is an "injury involving a substantial risk of death." See U.S.S.G. § 1B1.1, cmt. n.1(J). Therefore, we conclude that it was not clearly erroneous for the district court to apply the six-level enhancement for permanent or life-threatening injuries under § 2B3.1(b)(3)(C).

### III.

Third, Bennett argues that the district court erred in enhancing his sentence by three levels pursuant to U.S.S.G. § 3B1.1 based on Bennett's role as a manager or supervisor in an offense that involved five or more participants or was otherwise extensive. Bennett contends that the imposition of this enhancement was

5

erroneous because: (1) he neither managed nor supervised any of the bank robbery participants and (2) there were fewer than five participants in the robbery and the robbery was not otherwise extensive.

"A district court's enhancement of a defendant's offense level based on his role [in the offense] is a finding of fact reviewed for clear error." United States v. Rendon, 354 F.3d 1320, 1331 (11th Cir. 2003), cert. denied 124 S. Ct. 2110 (2004).

A defendant's base offense level is to be increased by three levels if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). In determining the scope of the defendant's role in the offense, the court is to consider various factors. Id. § 3B1.1, cmt. n.4; Rendon, 354 F.3d at 1331–32. These factors include the extent to which the defendant planned the offense and exercised control or authority over the other participants, the nature of the defendant's participation in the commission of the crime, and whether the defendant claimed a right to a larger share of the fruits of the crime than the other participants. U.S.S.G. § 3B1.1, cmt. n.4; Rendon, 354 F.3d at 1331–32. A "participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." Id. § 3B1.1, cmt.

6

n.1.

The district court's conclusion that Bennett acted as a manager or supervisor in the robbery was not clearly erroneous. Bennett helped plan the robbery with codefendant Albert Young. He also tried to recruit a friend to help in the robbery, directed the actions of Young during the robbery and, along with Young, received a greater share of the proceeds than did the other participants.

Neither is the district court's conclusion that there were five or more participants in the bank robbery clearly erroneous. It is undisputed that there were four individuals involved in the robbery itself. Bennett and two codefendants, Albert and Timothy Young, entered and held up the bank. A third codefendant, Joiheeda Gibson, drove the get-away car. The district court also counted the girlfriends of Albert Young and Bennett as participants in the criminal activity because, after the robbery, they had held their boyfriend's share of the proceeds knowing that it was the fruit of the robbery. We find no clear error in their inclusion as "participants."

An individual need not be convicted of, or even charged with, an offense in order to be counted as a "participant." U.S.S.G. § 3B1.1, cmt. n.1; Rendon, 354 F.3d at 1332. Instead, an individual is a participant if she is "criminally responsible for the commission of the offense." U.S.S.G. § 3B1.1, cmt. n.1.

Here, there was no clear error in the district court's conclusion that Young's and Bennett's girlfriends are criminally responsible for the commission of the bank robbery. The girlfriends are criminally responsible under the principles of accessory liability. By holding the stolen money for their boyfriends, the girlfriends acted as accessories after the fact. Knowing that a bank robbery had been committed, they assisted the robbers in order to prevent or hinder their apprehension. 18 U.S.C. § 3. Under § 3, one who acts as an accessory after the fact is punishable for up to one-half the maximum term of imprisonment that a principal would receive for the commission of the crime. Id. In other words, an accessory after the fact may be sent to jail as a result of her knowing assistance of a crime, even where that assistance didn't occur until after the crime had been committed. That after-the-fact assistance is enough to make an individual "criminally responsible" pursuant to § 3B1.1. See United States v. Hall, 101 F.3d 1174, 1178 (7th Cir. 1996) ("[J]ust as a party who knowingly assists a criminal enterprise is criminally responsible under principles of accessory liability, a party who gives knowing aid in some part of the criminal enterprise is a 'criminally responsible' participant under the Guidelines.").

We recognize that an individual who acts as an accessory after the fact is not treated as a principal in the crime as, for example, an individual who aided and

abetted the commission of the offense would be.  <u>See</u> 18 U.S. § 2.  Section 3B1.1 does not define "participant" as one who is treated as a principal in the commission of an offense, however, but as one who is "criminally responsible" for it.  We conclude that being subject to imprisonment in connection with the commission of a crime makes one "criminally responsible" for, and a "participant" in, that crime for purposes of § 3B1.1.

Because the girlfriends were "criminally responsible" for the commission of the bank robbery, the district court did not err by counting them as participants in the criminal enterprise.  When the girlfriends are included there were at least six participants in the offense.  Therefore, the imposition of the three-level enhancement to Bennett's offense level under § 3B1.1 was not clearly erroneous.

AFFIRMED.