[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-13543

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 14, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00001-CR-HL-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN PETTIFORD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(August 14, 2007)**

Before DUBINA and BLACK, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

---

[*] The Honorable Jane A. Restani, Chief Judge, United States Court of International
Trade, sitting by designation.

John Pettiford appeals the 120-month sentence imposed after he pleaded guilty to causing interstate travel in execution of a scheme to defraud, 18 U.S.C. § 2314. On appeal, Pettiford argues (1) his counsel was constitutionally ineffective at sentencing, (2) the court erred by increasing his offense level for a leadership enhancement, (3) the court erred in applying an upward departure under U.S.S.G. § 4A1.3, and (4) his sentence, at the statutory maximum, is unreasonable. After a thorough review of the record, we conclude that the record is insufficiently developed for our review of the ineffective assistance of counsel claim, and we dismiss that claim without prejudice. We conclude, however, that the court did not err in increasing the base offense level by two points for a leadership enhancement. As for Pettiford's sentencing claims, we are unable to determine whether the district court departed from the applicable Guidelines range pursuant to a variance based on the 18 U.S.C. § 3553(a) factors or based on an upward departure under U.S.S.G. § 4A1.3. Accordingly, we vacate Pettiford's sentence and remand to the district court for resentencing.

## I. STATEMENT OF FACTS

Pettiford was indicted on January 15, 2004 with co-defendant Bobby Jean Pettiford, both charged with one count of causing interstate travel in execution of a

scheme to defraud, in violation of 18 U.S.C. § 2314, and three counts of interstate

transportation of stolen property, in violation of 18 U.S.C. § 2314.

On January 12, 2005, pursuant to a written plea agreement, Pettiford pleaded

guilty to one count of causing interstate travel in execution of a scheme to defraud,

and the remaining counts were dismissed. The plea agreement included the

following stipulation of facts:

> The offense charged in Count One, relates to the purchase of heavy
> equipment from Industrial Tractor, a company operating out of Ladson, South
> Carolina. Using his brother Larry's name, John Pettiford contacted Alan Gunter,
> the used equipment manager for Industrial Tractor, and made arrangements to
> purchase a backhoe. John Pettiford had also used Larry Pettiford's credit
> information to obtain approval for financing of the purchase through John Deere.
> Gunter agreed to bring the equipment to Pettiford for inspection if Pettiford
> agreed to buy it.
>
> On or about June 22, 2001, Gunter traveled from South Carolina to
> Jacksonville, Florida where the backhoe was located, then rode with the delivery
> driver from Jacksonville to Ty Ty, Georgia. Upon arrival in Ty Ty, Gunter met
> John Pettiford, who identified himself as Larry Pettiford and a woman who was
> represented to be "Larry's" wife, Betty. The woman was later identified as
> Bobby Jean Pettiford. After the machine was inspected and approved by John
> Pettiford, John Pettiford agreed to buy the backhoe for $31,000. Bobby Jean
> Pettiford prepared a check in the amount of $9,000 on an account in the name of
> "Larry Pettiford d/b/a Ace Nursery." John Pettiford signed the name of Larry
> Pettiford as payor. The check as delivered to Industrial Tractor's Jacksonville
> office where the credit account was to be set up for payment of the $22,000
> balance on the purchase.
>
> About a week later, Gunter again traveled to Albany, Georgia to sell a
> bulldozer to John Pettiford. On July 2, Gunter met with John and Bobby Jean
> Pettiford in Savannah to complete the paperwork on the transaction and received
> another check, this time in the amount of $5,000 as the down payment for the
> bulldozer. The $25,000 balance was also financed under the name Larry Pettiford
> through John Deere.
>
> By the time the checks were submitted to the bank for payment, both of
> the checks bounced and no payments were made on either of the accounts. As a

3

result, Larry Pettiford was indicted in Dougherty County Superior Court. In January, 2002 Gunter came to Dougherty County for a hearing, where he told authorities that the person who had been charged and arrested was not the man he dealt with. Gunter then was asked to go to Tifton, where Gunter viewed a photo line-up and identified John Pettiford as the man with whom he had dealt.

The terms of the plea agreement also stipulated the amount of loss for the purposes of sentencing to be greater than $70,000 but less than $120,000. The agreement also included a waiver of appeal, but specifically reserved Pettiford's right to review his sentence in the case of an upward departure from the Sentencing Guidelines pursuant to U.S.S.G. §§ 5K2.0 and/or 4A1.3 or a claim of ineffective assistance of counsel.[1]

At sentencing, the district court adopted the full Presentence Investigation Report (PSI). The PSI provided for an offense level of 15 with a resulting Guidelines range of 41-51 months.[2] The PSI also noted two factors may warrant an upward departure: (1) a criminal history category that did not adequately represent the scope and nature of the criminal history, and (2) a guideline calculation, based on the relevant conduct, that did not reflect the actual

---

[1] The government affirmatively abandoned the waiver argument on appeal. We will therefore address all issues raised by Pettiford.

[2] The PSI started with a base offense level of six, pursuant to U.S.S.G. § 2B1.1(a)(2). This offense level was increased by eight levels based on the stipulated amount of loss in the plea agreement. § 2B1.1(b)(1)(E). Two points were added under § 2B1.1(b)(10)(C)(i) for the unauthorized use of his brother's identification, and two additional points were added under § 3B1.1(c) for a leadership role. Pettiford then received a three-level reduction for acceptance of responsibility under § 3E1.1(a)-(b), resulting in a total offense level of 15.

seriousness of the criminal conduct. The PSI suggested the district court could depart upwards from the Guidelines range pursuant to U.S.S.G. §§ 5K2.0 or 4A1.3.

From here, it is unclear how the district court reached Pettiford's sentence, which was the statutory maximum of 120 months. At the sentencing hearing, it couched its reasons in terms of the sentencing factors listed in 18 U.S.C. § 3553(a). The court stated that "[t]he sentence as imposed is an appropriate sentence in this case, and it's my judgment that such a sentence complies with the factors that are to be considered as set forth at 18 U.S.C. § 3553(a)." In particular, the district court found Pettiford's criminal history category substantially under-represented the seriousness of his criminal history or the likelihood that he would commit other crimes. It therefore concluded "that the sentence as imposed, which is outside the advisory guideline sentencing range, adequately addresse[d] the seriousness of the offenses, promote[d] respect for the law, and provide[d] just punishment . . . ." The court noted Pettiford had 37 criminal history points, 24 more than what is required for the maximum criminal history category of VI, and he had committed 28 previous incidents involving theft or fraud. In all, it appeared the district court used its discretion under *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), to impose what we have called a "variance" from the advisory Guidelines range. *See United States v. Irizarry*, 458 F.3d 1208, 1211-12 (11th Cir. 2006)

5

(noting the difference between a variance pursuant to the district court's discretion and a departure under the Guidelines).

Pettiford timely appealed his sentence. A few days later, at the Government's request, the district court issued a supplement to the sentencing record, setting forth its written statement of reasons for the sentence. Instead of explaining that it had applied a variance, the court explained the sentence was the result of an upward departure under U.S.S.G. § 4A1.3. Section 4A1.3 allows for an upward departure if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes[.]" U.S.S.G. § 4A1.3(a)(1).

## II. DISCUSSION

A. *Ineffective Assistance of Counsel*

Pettiford argues his counsel at sentencing provided ineffective assistance of counsel because his attorney did not timely explain the contents of the PSI or the general law governing his sentencing. In particular, Pettiford's counsel did not send Pettiford a copy of the PSI or discuss its contents with Pettiford until the day before the sentencing hearing, making it impossible to investigate and make objections to the PSI. Pettiford also claimed that his counsel's failure to support

6

his objection to the leadership enhancement with factual or legal authority constituted ineffective assistance of counsel.

An ineffective assistance of counsel claim is a mixed question of law and fact. We review any factual findings for clear error and review the application of law to those facts *de novo*. *Conklin v. Schofield*, 366 F.3d 1191, 1201 (11th Cir. 2004). "Generally, claims of ineffective assistance of counsel are not considered for the first time on direct appeal." *United States v. Tyndale*, 209 F.3d 1292, 1294 (11th Cir. 2000). An exception to this rule exists where the record is sufficiently developed for this Court to review the factual basis for the claim. *Id.*

To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, which is defined as representation that falls below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense, which can be shown by "demonstrating that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Verbitskaya*, 406 F.3d 1324, 1337-38 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 1095 (2006) (internal quotations omitted).

Pettiford claims that a reasonable defense counsel would have discussed the PSI with him prior to the day before sentencing to allow time to investigate any

questions Pettiford may have raised about the validity of his alleged criminal history and eligibility for possible sentencing enhancements, departures or variances. Although this may constitute deficient performance, the alleged errors in the PSI must have some basis in fact to be prejudicial. At this point, there is nothing beyond mere speculation that the information in the PSI on which the district court relied was false. The record is thus insufficiently developed for us to review this claim on direct appeal, and we dismiss this claim without prejudice.

B.     *Leadership Enhancement*

Pettiford argues that because his wife was not a willing participant of the fraud, he could not be a leader. Alternatively, Pettiford argues his wife had as great a role in the fraud as he did, and he could not have been the leader because they were essentially equal partners. We review a court's decision to enhance a defendant's offense level based on a leadership role for clear error. *United States v. Phillips*, 287 F.3d 1053, 1055 (11th Cir. 2002).

Section 3B1.1(c) provides for a two level increase "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity" other than one involving five or more participants. U.S.S.G. § 3B1.1. "In order to demonstrate that the defendant occupied a leadership role under this standard, . . . there must be at least one participant in addition to the defendant." *United States v. Holland*, 22

8

F.3d 1040, 1045 n.8 (11th Cir. 1994). The commentary to § 3B1.1 provides that "[a] 'participant' is a person who is criminally responsible for the commission of the offense[.]" U.S.S.G. § 3B1.1, Appl. Note 1. "[M]ere unknowing facilitators of crime are not criminally responsible participants under § 3B1.1." *United States v. Hall*, 101 F.3d 1174, 1178 (7th Cir. 1996).

The stipulation of facts contained in the plea agreement and the PSI, as adopted by the court, provide sufficient evidence that Bobby Jean Pettiford was a participant under § 3B1.1 and that Pettiford had a leadership role in the offense. The guilty plea and PSI demonstrate that Bobby Jean Pettiford prepared a check in the name of Pettiford's alias and was present when Pettiford introduced himself as his brother Larry. In addition, the stipulation contains sufficient facts to establish Pettiford had a leadership role. He contacted the dealership, made arrangements to purchase the equipment, signed the check in his brother's name, inspected the equipment, and generally controlled the course of proceedings. Therefore, we conclude that the district court did not clearly err in finding Pettiford had a leadership position in the offense.

C.    *Pettiford's Sentencing Arguments*

As discussed above, it is unclear how the district court arrived at a sentence of 120 months in this case. During the sentencing hearing, the district court

9

applied what we have termed a variance from the advisory Guidelines range based on its discretion under *Booker*. Days later, however, the district court issued a written statement of reasons indicating the sentence was based on a departure pursuant to U.S.S.G. § 4A1.3. Our review of Pettiford's sentence requires us to know whether the court applied a variance under 18 U.S.C. § 3553 or an upward departure under U.S.S.G. § 4A1.3(a)(4)(B).

### III. CONCLUSION

Based on the above discussion, we VACATE Pettiford's sentence and REMAND for resentencing. We dismiss the ineffective assistance of counsel claim without prejudice because it is not sufficiently developed for our review. We further conclude the district court did not clearly err by increasing Pettiford's offense level for a leadership role.

**VACATED AND REMANDED.**