**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry Richard BUSH, Defendant–
Appellant.**

**No. 95–2079.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1996.

Decided March 20, 1996.

Gregory M. Gilmore (argued), Office of U.S. Atty., Springfield, IL, for plaintiff-appellee.

Brian T. Otwell (argued), Huntley, Giganti & Otwell, Springfield, IL, for defendant-appellant.

Before POSNER, Chief Judge, and BAUER and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Larry Bush was a painter. He wasn't the sort of painter who did oil on canvas—Bush worked with a roller. In this case he tried to roll his employer and its insurance company. And he almost got away with it. But greed and a spurned spouse did him in.

Bush worked for the River City Painting and Sandblasting Company which was doing a job for a water treatment plant in Bloomington, Illinois, under a subcontract with the River City Construction Company. Over the weekend of October 1, 1988, Bush ruptured a disc in his back at home while trying to fix the engine on his pickup truck. Although he was in considerable pain, he dragged himself to work on Monday, telling a co-worker, a chap named Hopkins, that he did not expect to do much work that day. He had a plan to make his employer pay for his injury.

Bush and Hopkins were assigned to paint a 12–foot–deep concrete pit. Bush selected an old worn rope, loosely tied it to a heavy, cast-iron paint pot, climbed into the pit, and directed Hopkins to lower the pot to him. Bush falsely claimed that he injured his back doing this operation. Hopkins drove Bush home after work.

During the ride home, Bush asked Hopkins to help him get his medical expenses paid by supporting a claim he planned to make for worker's compensation benefits. Hopkins agreed, as did Bush's wife, Sandra, when she heard of the plan. Bush suggested that Hopkins should say that the rope broke as the paint pot was lowered into the pit and that it fell, striking Bush and knocking him down.

Bush reported to work over the next four weeks but did little. Thereafter, he underwent an operation to repair his back. After the operation he applied for worker's compensation benefits by filling out insurance forms for the Liberty Mutual Insurance Company, his employer's insurer. Sandra joined her husband in filling out the forms, which falsely claimed that Bush ruptured his back at work. After the claim for benefits was filed, an insurance adjuster contacted Bush and Hopkins to confirm the details of

the accident. Both said that the phony accident actually happened.

Bush received disability checks from Liberty Mutual from December 9, 1988, until June 20, 1989, totaling $16,426.56. Liberty Mutual then stopped paying because Bush refused to attend occupational therapy sessions. Bush also received medical benefits totaling $11,944.04 and eventually settled a claim for permanent partial disability for $37,805. Thus, the phony scheme netted Bush a sweet sum, $66,175.60. He should have quit while he was ahead.

After settling with his employer, Bush got greedy and sued the treatment plant and River City for the same phony injury. He demanded $282,000. Bush produced the rope which, he said, broke as the paint pot was lowered to him. But the jury found for the defendants when Sandra, now divorced from Bush, told the lawyers for the defendants the claim was a fake and she went along with the scam only because Bush had been abusive to her.

In September 1994, Bush was the beneficiary of a four-count indictment in federal court. Count I charged that he conspired to commit mail fraud in violation of 18 U.S.C. § 371 by falsely representing that he was injured at work when in fact he was injured at home. The other counts charged substantive acts of mail fraud committed in support of the fraudulent claim. Bush went to trial and was convicted on all counts. He was sentenced to 48 months imprisonment on each count, to be served concurrently, followed by 3 years of supervised release. He now appeals, asserting that the district court erred by enhancing his sentencing range for more than minimal planning, U.S.S.G. § 2F1.1(b)(2)(A), and for his role as organizer of the criminal activity, U.S.S.G. § 3B1.1(c).

■ Our review of a district court's interpretation of the guidelines is de novo, and our review of its factual findings is for clear error. *United States v. Garcia,* 69 F.3d 810, 815 (7th Cir.1995). A finding of fact is clearly erroneous only if, after viewing the evidence, we are left "with the definite and firm conviction that a mistake has been committed." *United States v. Herrera,* 878 F.2d 997, 1002 (7th Cir.1989) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). "Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Bessemer City,* 470 U.S. at 574, 105 S.Ct. at 1511.

■ The district court enhanced Bush's sentence two levels for more than minimal planning, U.S.S.G. § 2F1.1(b)(2)(A), finding that the staging of the accident and Bush's subsequent collusion with his wife and Hopkins on a common version of the events constituted "more planning than is typical for commission of the offense in a simple form." U.S.S.G. § 1B1.1, comment (n.1(f)). Bush asserts that this was error because the offense was a "simple crime of opportunity."

Our recent decision in *United States v. Levinson,* 56 F.3d 780, 782 (7th Cir.1995) forecloses Bush's argument. In Levinson the defendant procured the destruction of a valuable horse and then filed a fraudulent claim with his insurance company. The defendant's activities consisted of hiring a horse killer to destroy the animal and then mailing a fraudulent claim to an insurance company. On appeal, Levinson argued that his crime did not involve more than minimal planning. We disagreed, noting:

> The commission of a crime on the spur of the moment—*an example from mail fraud would simply be inflating a valid insurance claim*—is less dangerous, other things being equal, than the commission of a crime pursuant to a more or less elaborate plan. Planning involves foresight and criminals who operate with foresight are much more dangerous than impulsive criminals. The latter are easier to catch and the former are capable of doing much more harm, regardless of how much they happened to do in the particular case. They are also more likely to involve more people in their criminal activities, as happened here.

*Levinson,* 56 F.3d at 782 (citations omitted).

Here, Bush's actions exceeded simply exaggerating an otherwise valid claim. After staging the accident, he persuaded (how much salesmanship this took is unclear) his wife and Hopkins to back up his claim. Bush

promoted the fraud by cutting the rope used to lower the paint pot, by exaggerating his injury to medical professionals, by lying to the insurance adjuster, and by testifying falsely, both at a deposition and at his civil trial against the treatment plant and River City. The extra steps taken here easily promote what is concededly minimal planning to more than minimal planning. In fact, we would have been surprised if these activities did not earn a two-point enhancement in the district court. The appeal on this point is meritless.

■ The district judge also added a two-level enhancement for role in the offense under U.S.S.G. § 3B1.1 because he concluded that Bush organized the scheme to defraud, directed Hopkins to lie to the insurance adjuster, and Sandra to complete the fraudulent workers compensation claim form. In announcing the enhancement Judge Mills noted, "In summary, the entire fraudulent scheme and the actions of the conspirators were organized, designed, and directed by the defendant." On appeal, Bush contends that the control which he exercised over his wife and Hopkins was too attenuated and incidental to qualify for the enhancement.

U.S.S.G. § 3B1.1 provides for a two-level enhancement if a defendant was an organizer, leader, manager, or supervisor of any criminal activity. The guidelines do not define the terms, but application note 3 to § 3B1.1 lists seven factors that are helpful in determining if a defendant qualifies for the enhancement:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

■ Although control over other participants is a significant factor, the overall focus under § 3B1.1 is relative responsibility within a criminal organization. *United States v. Granado,* 72 F.3d 1287, 1289 (7th Cir.1995); *United States v. Michalek,* 54 F.3d 325, 333 (7th Cir.1995). No single factor is essential to determine whether a sentence should be adjusted under § 3B1.1, nor must equal weight be given to each factor. *Granado,* 72 F.3d at 1289; *United States v. Fones,* 51 F.3d 663, 665 (7th Cir.1995). Thus, for example, even if a defendant did not exercise control, an enhancement under § 3B1.1 "may apply so long as the criminal activity involves more than one participant and the defendant played a coordinating or organizing role." *Granado,* 72 F.3d at 1289; *United States v. Johnson–Dix,* 54 F.3d 1295, 1309 (7th Cir. 1995).

■ The record in this case amply supports the district court's decision to impose the challenged enhancement. Bush clearly was the organizer of the criminal activity: he devised the scheme, recruited the assistance of his wife and Hopkins, formulated the story to tell the insurance adjuster, and coordinated the efforts of both his wife and Hopkins. Bush's assertion that his control was too attenuated to justify an enhancement misses the boat—control is simply one factor for the court to consider. But even if control were the *sine qua non* of § 3B1.1, the district court could reasonably infer from the evidence that Bush exerted sufficient control over his wife and Hopkins to justify the enhancement. It may reasonably be inferred from the evidence that Sandra filled out the fraudulent workers compensation claim at his request; she testified at trial that Bush had physically abused her in the past and that she was afraid of him. It was Bush who recruited Hopkins to assist in the scheme, and he told Hopkins what to say. The district court did not err by enhancing Bush's sentence for his organizational role in the offense. For these reasons, Bush's challenge to his sentence is denied, and the judgment of the district court is AFFIRMED.