In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4158

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MYRIS MATTHEWS,

Defendant-Appellant.


Appeal from the United States District Court
for the Central District of Illinois.
No. 2:99CR20007-001--Michael P. McCuskey, Judge.


Argued June 14, 2000--Decided July 19, 2000


Before Cudahy, Flaum, and Manion, Circuit Judges.

Flaum, Circuit Judge.  Myris Matthews pleaded guilty to one count of possession of cocaine base ("crack") with the intent to distribute. See 21 U.S.C. sec. 841(a)(1). He was sentenced to 240 months imprisonment and five years supervised release. Matthews appeals his sentence, arguing that the district court erred by giving him a two-level upward adjustment for a supervisory role under U.S.S.G. sec. 3B1.1(c). We affirm.

I.  BACKGROUND

While investigating the Gangster Disciples street gang in Decatur, Illinois, agents assigned to the Illinois State Police Task Force X arranged several controlled buys of crack from Matthews. The upward adjustment for his role in the offense was based on two of these buys, both of which preceded the crack offense charged in the indictment. The first transaction occurred on January 25, 1999. On that day, Matthews was paged by a confidential source ("CS") who knew him as "Twin" and who had bought crack cocaine from him previously. Matthews returned the call, which was recorded, and told the CS to go to 1336 East Walnut Street in Decatur. The CS, wearing a wire and under surveillance, went to the address, where he was met by an unidentified woman. The CS told her that Twin had sent him to buy crack, and she acknowledged that Twin had alerted her that

he would be arriving. The woman let the CS into the kitchen and said she would sell him two rocks of crack for $40. When the CS replied that he always got a better deal from Twin, she responded that he could wait for Twin if he wanted a better deal. The CS purchased the crack cocaine.

The second transaction occurred the following day, January 26, 1999. The CS again telephoned Matthews and arranged to purchase powder cocaine at the Walnut Street address. Upon arriving at the house, the CS was met by Matthews and an unidentified man. Again, the CS wore a wire and was under surveillance until he entered the house. The government alleges that the unidentified man was in possession of the cocaine and gave it to the CS at Matthews' direction. The parties agree that Matthews, not the unidentified man, negotiated the price, but disagree as to who was in possession of the cocaine. Matthews argues that the government's evidence established that the unidentified man was not in any way involved in the transaction.

After several more transactions between the CS and Matthews, the agents obtained a search warrant for the Walnut Street address. Upon arriving at the house, the agents encountered Matthews and searched him, finding crack, cash, and a key. Matthews told the agents that the key was to his father's house. Matthews' father allowed agents to search his house without a warrant. He directed the agents to a bedroom that Matthews used. There the agents found crack, cash, marijuana, and a gun.

After Matthews pleaded guilty, the probation officer recommended a two-level upward adjustment for Matthews' supervisory role, explaining that "the defendant exerted control over the unidentified female and male that took part in . . . the controlled deliveries." Matthews filed objections to the Pre-Sentence Report ("PSR"), arguing that he did not exert control over any individual during the transactions on January 25 and January 26. After hearing testimony from the agent who monitored the wire worn by the CS and counsel's arguments at the sentencing hearing, the district court concluded that the upward adjustment was warranted and adopted the probation officer's recommendation.

II.  DISCUSSION

We review an upward adjustment for a defendant's aggravating role in an offense for clear error. United States v. Billingsley, 115 F.3d 458, 464 (7th Cir. 1997). Whether the defendant played an aggravating role is a question of fact that is clearly erroneous "only

if, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." United States v. Granado, 72 F.3d 1287, 1290 (7th Cir. 1995) (internal citations and quotations omitted). If the fact finder chooses between two permissible views of the evidence, the choice is not clearly erroneous. Id.

A two-level upward adjustment is warranted under U.S.S.G. sec. 3B1.1(c) if "the defendant was an organizer, leader, manager, or supervisor" in the criminal activity. Application Note 4 provides factors to be used in determining whether a defendant falls under any of these categories. Those factors are: (1) the exercise of decision making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. sec. 3B1.1(c), comment. (n.4). "Although control over other participants is a significant factor, . . . [n]o single factor is essential to determine whether a sentence should be adjusted under sec. 3B1.1, nor must equal weight be given to each factor." United States v. Bush, 79 F.3d 64, 67 (7th Cir. 1996) (internal citations omitted). "Thus, for example, even if a defendant did not exercise control, an [upward adjustment] under sec. 3B1.1 may apply so long as the criminal activity involves more than one participant and the defendant played a coordinating or organizing role." Id.

Matthews argues that the evidence related to the January 25 drug deal does not support a finding that he exercised any control over the unidentified woman who sold the crack to the CS. We disagree. At the very least, Matthews played a coordinating or organizing role that was sufficient for an upward adjustment under sec. 3B1.1(c). See Billingsley, 115 F.3d at 465 (upward adjustment pursuant to 3B1.1(c) was not clearly erroneous even though district court did not explicitly find that defendant "controlled" other participants). Matthews coordinated the transaction by setting the time and location of the deal. He also called the unidentified woman to let her know that the CS would be arriving. Moreover, the female's statement indeed evidenced Matthews' control over her. When the CS balked at the price, the woman responded that he would have to wait for Matthews if he wanted a better price. A reasonable inference from this statement is that Matthews, not the woman, had the authority to negotiate the price. Matthews argues that this

statement meant only that the CS was welcome to buy from him if the CS did not like the woman's price, and, in his view, the appropriate inference to draw is that he was involved as a middleman--he merely directed the CS to a crack house where drugs could be purchased. The district court was thus presented with two permissible views of the evidence, and did not clearly err by choosing to believe that the female's statement evidenced Matthews' control over her. See Granado, 72 F.3d at 1290 (affirming upward adjustment based on district court's view of the evidence).

Matthews also argues that the second transaction on January 26 did not occur as described in the PSR. The PSR recounts that Matthews negotiated the price and then directed an unidentified man to give the drugs to the CS. Matthews, however, asserts that the unidentified man did not have the drugs in his possession. Rather, he argues that the evidence established that he alone negotiated the deal and that he was the one who gave the CS the drugs. Matthews points to testimony at the sentencing hearing that, he alleges, contradicts the PSR. On direct examination, agent Richard Hughes, who monitored the wire worn by the CS and heard the transaction, testified that the unidentified man "brought several packages of cocaine out of his pocket" and was directed by Matthews to give the CS "three for the price of $40." But Matthews points to the following exchange on Hughes' cross-examination as proof that it was he, not the unidentified man, who gave the drugs to the CS:

Q: And on that occasion, it was actually Mr. Matthews who gave the confidential source a--it was powder cocaine in exchange for the $40 that you had given the confidential source, correct?

A: Yes.

Q: It was not the unidentified black male who supplied your confidential source with any drugs on that occasion; isn't that correct?

A: Yes.

Q: And it was Mr. Matthews personally who supplied the--and it was powder cocaine on that occasion, correct?

A: Yes.

We are troubled by this seemingly contradictory testimony. Although the responses to the first and third questions in the above exchange are unclear due to the compound nature of the questions, the agent clearly responds to the

second question by stating that the unidentified man was not the one to give the drugs to the CS. The government did not object to this line of questioning nor did it respond to Matthews' argument at the sentencing hearing based on this apparently inconsistent testimony. In its brief on appeal, the government sets aside the effect of the agent's response to the second question and simply insists that the testimony was not contradictory. If the unidentified man did not give the drugs to the CS, there is no evidence that Matthews played a supervisory or organizing role in the January 26 transaction. We find that the record does not support the finding that Matthews played an aggravating role in this transaction. See United States v. Mankiewicz, 122 F.3d 399, 405-06 (7th Cir. 1997) (prior to the imposition of upward adjustment pursuant to 3B1.1(c), government must establish that the defendant had some real and direct influence on other participants); United States v. Mustread, 42 F.3d 1097, 1103 (7th Cir. 1994) (noting that, at a minimum, defendant must exert some real and direct influence). Because of the significant difference that even a two-level upward adjustment can have on the length of a sentence, we underscore that a defendant's role must be clear prior to imposing an upward adjustment pursuant to 3B1.1(c).

However, regardless of the uncertainty surrounding the January 26 transaction, Matthews was still eligible for the upward adjustment based on the January 25 transaction. See United States v. Sierra, 188 F.3d 798, 803 (7th Cir. 1999) (noting that section 3B1.1(c) "only requires that the defendant directed one person").

III.  CONCLUSION

For the foregoing reasons, Matthews' sentence is

Affirmed.