**UNITED STATES OF AMERICA, Plaintiff–Appellee,**

v.

**Yisa B. BAKARE, Defendant–Appellant.**

**No. 00–3142.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 30, 2001.

Decided Feb. 16, 2001.

ORDER

Yisa B. Bakare pleaded guilty to four counts of conspiracy to possess with the intent to distribute heroin in violation of 21 U.S.C. § 846. The district court determined that Mr. Bakare warranted a two-level upward adjustment for his role as an "organizer, leader, manager, or supervisor" under United States Sentencing Guidelines § 3B1.1(c) and sentenced him to 60 months' imprisonment. On appeal, Mr. Bakare argues that the evidence did not support a finding that he exercised real and direct control over any other participant and thus, the district court erred in assessing a two-level upward adjustment under § 3B1.1 (c). We affirm the judgment of the district court.

In 1997 Mr. Bakare and a friend, Yinka Adeogun, initiated a conspiracy to sell heroin in Chicago. After a cooperating witness alerted the FBI that Mr. Bakare and Mr. Adeogun were members of an organization that was selling heroin in Chicago, agents for the Federal Bureau of Investigation began investigating these two men. In August 1997, while conducting surveillance, the FBI observed Mr. Bakare and Mr. Adeogun selling heroin at various locations in Chicago.

In July 1998, as part of its continuing investigation authorized by court order, the FBI began intercepting the communications to and from Mr. Bakare's digital pager. On several occasions between July 1998 and January 1999, the FBI recorded conversations in which Mr. Bakare arranged to sell heroin to a confidential informant working for the FBI. Typically, the confidential informant would page Mr. Bakare, using an electronic pager number and a special code number given to him by Mr. Bakare. Mr. Bakare had instructed the confidential informant to use the special code number to alert him whenever he, the confidential informant, was interested in purchasing drugs. After being paged, Mr. Bakare would telephone the confidential informant on a cellular phone and arrange a meeting place for the transaction, often the residence of the confidential informant. During these telephone conversations, Mr. Bakare would also set the price and the quantity of drugs to be sold.

On four occasions, Mr. Bakare arranged the sale of 50 grams of heroin to the confidential informant, and on one occasion, he arranged the sale of 100 grams of heroin. The actual drug exchanges typically unfolded in this manner: Mr. Adeogun would enter the confidential infor-

mant's residence first, confirm that the confidential informant had enough cash to meet the agreed on price, and then report this information to Mr. Bakare by calling him on a cellular phone. Mr. Adeogun would then leave the confidential informant's residence for a brief moment to speak to Mr. Bakare, return with the drugs, and deliver them to the confidential informant. On a few occasions, Mr. Bakare conducted the transactions alone, even providing the confidential informant with a few "free samples" of heroin before a large purchase was to be made.

After conducting surveillance of Mr. Bakare and Mr. Adeogun's criminal activities for several months, the FBI arrested the two men in February 1999. In August 2000 Mr. Bakare pleaded guilty to possession with intent to distribute 300.23 grams of heroin. Mr. Adeogun, however, fled after he was released on bail before trial and has not been apprehended.

At sentencing, Mr. Bakare did not object to calculations in the PSR that he had a Level I Criminal History and a base offense level of 26. The district court also imposed the three-level reduction for acceptance of responsibility recommended in the PSR, *see* U.S.S.G. § 3E1.1, which lowered his offense-level to 23.

The district court then imposed a two-level upward adjustment under U.S.S.G. § 3B1.1(c)[1] because Mr. Bakare was an "organizer, leader, manager, or supervisor." The district court concluded that "if Mr. Bakare essentially is the one negotiating the deal, if Mr. Bakare is the one who sends the co-defendants to where it is that they are going to make the delivery, and if it is Mr. Bakare who is hanging on to the contraband until he knows that they have

---

1. Section 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by two levels."

got the money, that to me is enough to make him a leader and an organizer and lead me to the conclusion ... that he indeed is the leader...." This adjustment raised his offense level to 25 and placed Mr. Bakare in the 57–71 month guideline range. The district court sentenced Mr. Bakare to 60 months' imprisonment, the mandatory minimum sentence. *See* 21 U.S.C. § 841(a).

The only issue before us is whether the district court incorrectly increased Mr. Bakare's sentence by two offense levels for his role as an "organizer, leader, manager, or supervisor" pursuant to § 3B1.1(c). We review this finding of the district court for clear error. *See United States v. Matthews,* 222 F.3d 305, 307 (7th Cir.2000). If we should determine that the district court—in finding that Mr. Bakare held a leadership role—choose between two permissible views of the evidence, the choice is not clearly erroneous. *See id.*

Mr. Bakare argues that he should not have received the two-level adjustment under § 3B1.1(c) because he and Mr. Adeogun were merely "long time friends, ... simply partners in their drug scheme and nothing more," and the evidence failed to show that he possessed any "real or direct influence" over Mr. Adeogun. Specifically, Mr. Bakare disputes the government's assertion that he recruited Mr. Adeogun's involvement in the enterprise to avoid being the person actually handing the drugs to the buyer.

To determine whether a defendant was "an organizer, leader, manager, or supervisor" of the criminal enterprise, Application Note 4 lists seven factors to aid the district court in its analysis. *See* U.S.S.G. § 3B1.1, cmt. n. 4 (1998); *see also Matthews,* 222 F.3d at 307. Those factors are (1) the exercise of decision making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of

accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, cmt. n. 4 (1998).

In light of these factors, the evidence in the record supports the district court's determination that Mr. Bakare exercised a supervisory role over Mr. Adeogun. First, in his plea agreement, Mr. Bakare admitted to an extensive role in the organization and scheduling of several drug transactions. For example, Mr. Bakare agreed that "[o]n or about February 5, 1998, co-defendant Adeogun, *acting on behalf of* defendant Bakare, met with CW2, who tendered to co-defendant Adeogun $6,000 to purchase heroin." We previously have determined that arranging drug transactions to be carried out by other members of the conspiracy warrants an upward adjustment. *See United States v. Vargas,* 116 F.3d 195, 198 (7th Cir.1997) ("Orchestrating or coordinating the activities of others is enough to justify the departure.").

Moreover, Mr. Bakare used Mr. Adeogun to handle the physical legwork of the majority of the drug transactions, i.e. after the confidential informant arranged a meeting time with Mr. Bakare, Mr. Adeogun went to the site, verified that the confidential informant could buy the drugs and reported this information to Mr. Bakare. Once Mr. Adeogun verified that payment could be made, he contacted Mr. Bakare, who then delivered the drugs. During one transaction, in fact, the confidential informant observed Mr. Bakare in a car outside the confidential informant's residence waiting for Mr. Adeogun to collect the payment.

Mr. Bakare argues, however, that the district court's consideration of whether he was a leader did not comply with all of the "required inquiries" listed in Application Note 4. Specifically, he notes that there is no evidence showing that he recruited Mr. Adeogun to participate in the drug conspiracy or that he kept a larger share of the profits than Mr. Adeogun. Although a district court may focus on a variety of data in assessing the applicability of § 3B1.1(c), *see United States v. Frazier,* 213 F.3d 409, 417 (7th Cir.), *cert. denied,* 531 U.S. 1015, 121 S.Ct. 574, 148 L.Ed.2d 491 (2000); *United States v. Sierra,* 188 F.3d 798, 803–04 (7th Cir.1999), it need not find the presence of every factor. *See United States v. Lemmons,* 230 F.3d 263, 267 (7th Cir.2000); *United States v. Bush,* 79 F.3d 64, 67 (7th Cir.1996). The evidence is sufficient to support the district court's determination that Mr. Bakare exercised a supervisory role over Mr. Adeogun to qualify for the § 3B1.1(c) adjustment.

Because the district court did not clearly err in finding that the evidence warranted the application of a two-level upward adjustment under § 3B1.1(c), Mr. Bakare's sentence is affirmed.

AFFIRMED