UNITED STATES of America,
Plaintiff–Appellee,

v.

David MANDEL, Defendant–Appellant.

No. 00–3440.

United States Court of Appeals,
Seventh Circuit.

Submitted June 12, 2001[1].

Decided July 31, 2001.

---

1. The parties waived oral argument in this appeal. Accordingly, this appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(f).

Before Hon. MANION, Hon. DIANE P. WOOD, Hon. WILLIAMS, Circuit Judges.

## ORDER

David Mandel pleaded guilty to one count of making a false statement to a financial institution, 18 U.S.C. § 1014, and was sentenced to 12 months and one day in prison, three years of supervised release, a $50,000 fine and $243,350 in restitution. Mandel appeals his sentence, arguing that the district court erred in increasing his offense level by two under U.S.S.G.

§ 3B1.1(c) for his role as an organizer or leader. We affirm.

## I.

Mandel worked as a real estate agent in Cicero and Berwyn, Illinois. He also invested in realty for his personal benefit, regularly buying and selling property through a land trust and occasionally using the alias "Joseph Novak." From 1993 to 1995, Mandel, fellow realtor John Carcerano, Belinda Lopez, and others schemed to defraud lenders and the United States Department of Housing and Urban Development. Throughout the scheme, Mandel received real estate commissions and profited from the sales of the properties he personally owned.

As part of their scheme, Mandel, Carcerano, and Lopez obtained mortgage financing for unqualified buyers by fabricating gift letters, in which the "donor" claimed to give the buyer an amount needed for the down payment. To corroborate these "gifts," the three would obtain a cashier's check in the same amount, give a copy of this "earnest money check" to the lender, thus causing the lender to believe that the broker was holding an actual down payment in escrow, and then deposit the check into the account from which the funds used for the cashier's check had been drawn (usually a personal account). Mandel's wife, Marybelle Sanchez, at his direction provided the false gift letter in the transaction underlying Mandel's guilty plea. In that transaction Mandel sold the property at 3321 59th Court in Cicero— which he had bought one month earlier for $82,000 using the alias Joseph Novak—to a mother and daughter for $129,000. To enable the buyers, who did not have the money for the down payment, to obtain a $116,900 mortgage, Mandel had Sanchez prepare a gift letter in which she falsely claimed that she was a relative of the buyers and had given them $12,900 for the down payment. Mandel used $12,900 from his personal account to obtain a cashier's check, deleted the last digit of the serial number, and made a copy for the lender as verification of the earnest money. The buyers thus obtained the property knowing they had not made a down payment, and Mandel received over $111,000 in proceeds from the sale.

Mandel and Carcerano also used "straw buyers" to carry out their scheme. For example, when Mandel learned that the Giampa family was delinquent on their mortgage for their home at 2636 South Oak Park Avenue in Berwyn, he suggested that he could help them obtain "refinancing" with a lower monthly payment if they could find a "co-signer." June Stack, who was living in the Giampas' home at the time, agreed to represent that she intended to purchase and reside at the property. In support of Stack's application for a HUD-insured mortgage, Mandel, Carcerano, and Lopez knowingly submitted numerous false documents relating to Stack's employment and credit history and a gift letter that falsely represented that Lopez had given Stack $2,000 for a down payment. Lopez also obtained from her own bank account a false escrow check for $4,000 (the remainder of the $6,000 down payment), and submitted a copy of the check as part of the loan application. Stack qualified for the mortgage, and the Giampas kept the house and the loan money. Mandel and Carcerano paid Stack for her participation and Mandel received over $10,000 in commissions on the transaction. Stack also acted as a straw buyer in connection with Mandel's sale of property he owned at 5341 West 35th Street in Cicero, a transaction in which Carcerano acted as Mandel's selling agent.

In June 1998 a grand jury returned a 10–count indictment against Mandel, Car-

cerano, Lopez and Stack. Mandel was charged in Count 9 with making a false statement to a financial institution, the offense to which he pleaded guilty pursuant to a written agreement. In the presentence investigation report ("PSR"), the probation officer recommended an increase of two levels for Mandel's role as organizer or leader, U.S.S.G. § 3B1.1(c), and recommended a guideline imprisonment range of 15 to 21 months. The probation officer based the § 3B1.1(c) adjustment on the statements of FBI Special Agent Doug Hyde that Mandel "spearheaded the buying of the properties, he benefitted the most financially, and he directed his co-defendants in the scheme." The probation officer pointed to Carcerano as the other participant whom Mandel had supervised and directed during the offense.

At sentencing Mandel objected to the loss amount ($157,173) and the two-level adjustment under § 3B1.1(c), and requested a downward departure based on extraordinary family circumstances. The district court adopted the uncontested facts in the PSR, and refused to depart downward, but found that the loss amount was approximately $100,000, warranting a six rather than a seven-level increase in the offense level. U.S.S.G. § 2F1.1(b)(1)(G), (H). Mandel does not contest these rulings on appeal.

As to the § 3B1.1(c) adjustment, the government argued that the facts set out in the PSR, which the court had adopted, were sufficient evidence that Mandel directed "Carcerano, Lopez, Stack and any of the others" and therefore was an organizer or leader. Mandel responded that the grand jury testimony tended to show that Carcerano, not Mandel, directed the participants. The court concluded that even if Mandel and Carcerano were "exactly equal," Mandel's recruitment and supervision of Stack was an adequate basis

to support the two-level adjustment under § 3B1.1(c). The court then turned to the loss issue, but a few minutes later, defense counsel again raised the § 3B1.1(c) issue, arguing that Mandel did not direct Lopez, Stack or Carcerano. The government promptly pointed out that, in addition to Stack, by pleading guilty to Count 9 Mandel admitted that he directed his wife as part of the scheme. Defense counsel agreed: "There would be no dispute about that, Judge, that he directed his wife." The court then stated:

> Okay. Well, given that, and given *all* the facts contained in the [PSR], I, *once again*, just will state that I find that the use of the supervisory enhancement is appropriate and is established by a preponderance of the evidence, and so I will *hew to my prior ruling* with regard to the use of Sentencing Guideline 3B1.1.

(emphasis added.) Then, based on a total offense level of 13 and a criminal history category I, the district court sentenced Mandel to 12 months and one day in prison.

On appeal Mandel argues that there is insufficient evidence that his wife, Sanchez, was a knowing participant in the criminal activity, and therefore the district court committed clear error in finding that he directed or controlled "another participant in the criminal enterprise," U.S.S.G. § 3B1.1(c), and acted as an organizer or leader. In Mandel's view the district court based its decision to apply the § 3B1.1(c) adjustment *solely* on Mandel's direction of his wife, who, he asserts, was at most an "unknowing facilitator" of the offense. To the contrary, the government argues, the district court rested its decision on a finding, based on all the facts in the PSR, that Mandel directed or supervised both Stack and Sanchez, a finding that the government contends is not clearly erroneous.

## II.

Section 3B1.1(c) permits the sentencing court to increase a defendant's offense level by two if he was an organizer, leader, manager or supervisor of "one or more other participants" in the criminal activity. U.S.S.G. § 3B1.1(c) & comment. (n.2); *United States v. Fones,* 51 F.3d 663, 668–69 (7th Cir.1995) (defendant must have exercised control over at least one other participant to be subject to § 3B1.1 adjustment). To count as a "participant," an individual must be "criminally responsible" for the commission of the offense, but need not have been convicted. U.S.S.G. § 3B1.1, comment. (n.1); *United States v. Nelson,* 5 F.3d 254, 258 (7th Cir.1993). The determination of the defendant's role as an organizer or leader in the offense "is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct) ... and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G., Ch.3, Pt. B, intro. comment.; *United States v. Billingsley,* 115 F.3d 458, 465 (7th Cir.1997). We review a district court's factual determination that a defendant was an organizer or leader for clear error, which exists only if our review of the entire record leaves us with the " 'definite and firm conviction that a mistake has been committed.' " *See United States v. Matthews,* 222 F.3d 305, 307 (7th Cir.) (quoting *United States v. Granado,* 72 F.3d 1287, 1290 (7th Cir. 1995)), *cert. denied,* 531 U.S. 1000, 121 S.Ct. 500, 148 L.Ed.2d 470 (2000).

Mandel's contention that his direction of his wife was the sole basis for the district court's decision to impose the § 3B1.1(c) adjustment misconstrues the record and the district court's factual findings at sentencing. The court made an express finding that, apart from any direction of Carcerano or ownership of the properties, Mandel directed *Stack.* When defense counsel revisited the issue a few minutes later, the court did not, as Mandel argues, "relinquish and abandon" its position that his direction of Stack warranted the adjustment; to the contrary, the court *adhered* to its prior ruling and found that the § 3B1.1(c) adjustment was appropriate based on "*all* the facts contained in the [PSR]." (emphasis added). The record demonstrates that the court based the § 3B1.1(c) adjustment on a finding that Mandel supervised *both* Stack *and* Sanchez, and thus we reject Mandel's inaccurate view of the district court's basis for imposing the adjustment.

That said, we have little trouble upholding the district court's judgment. As for Sanchez, we cannot even reach the merits of Mandel's argument that she was merely an "unknowing facilitator" and not a "participant" for purposes of § 3B1.1 because he failed to preserve the issue for appellate review. Waiver, which is the deliberate relinquishment of a known right, extinguishes an error and precludes appellate review. *See United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Richardson,* 238 F.3d 837, 841 (7th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 2206, 149 L.Ed.2d 1035 (2001); *United States v. Staples,* 202 F.3d 992, 995 (7th Cir.2000). Here, defense counsel's representation that "no dispute" existed as to Mandel's direction of Sanchez with respect to the count of conviction effectively preempted any debate during the sentencing hearing about whether this conduct was grounds for imposing the § 3B1.1(c) adjustment. Mandel's concession demonstrated to the district court and the government that he had no objection to using his direction of his wife as a basis for the adjustment, and therefore waived appellate review of any issue regarding Sanchez. *See Richardson,* 238 F.3d at 841 (defendant waived right to

appeal enhancement by stating at sentencing that he had no objection); *Staples,* 202 F.3d at 995 (defense counsel's statement at sentencing that he had no objection to PSR waived appellate review of sentence); *United States v. Redding,* 104 F.3d 96, 99 (7th Cir.1996) (defendant who stated that he accepted criminal history calculation in PSR waived appellate review of sentence); *United States v. Griffin,* 84 F.3d 912, 923–24 (7th Cir.1996) (defendant's approval of jury instruction constituted abandonment of previous objections and waived appellate review).

■ Moreover, even were it properly preserved for the court's review, Mandel's argument that Sanchez was merely an unknowing facilitator is meritless. A preponderance of the evidence supports the conclusion that Sanchez was a criminally responsible participant. *See United States v. Stott,* 245 F.3d 890, 912 (7th Cir.2001) (government must prove and district court must find that enhancement is supported by preponderance of the evidence), amended on other grounds, —— F.3d ——, 2001 WL 706932 (7th Cir. June 22, 2001). An individual who is merely an "unknowing facilitator" of a crime is not a criminally responsible participant under § 3B1.1. *See United States v. Hall,* 101 F.3d 1174, 1178 (7th Cir.1996); *United States v. Tai,* 41 F.3d 1170, 1174 (7th Cir.1994). But, an individual who gives "knowing aid in some part of the criminal enterprise is a 'criminally responsible' participant," *Hall,* 101 F.3d at 1178, even if the individual is not convicted, U.S.S.G. § 3B1.1, comment. (n. 1); *United States v. Michalek,* 54 F.3d 325, 333–34 (7th Cir.1995) (defendant's wife was criminally responsible participant even though she was not convicted of bankruptcy fraud). Sanchez knowingly wrote and signed a gift letter falsely representing that she had given $12,900 to one of the buyers, whom she falsely stated

was her sister, of the property at 3321 59th Court in Cicero. The obviously fraudulent nature of the act of creating a false gift letter makes it impossible for Mandel to convince us that Sanchez did not know her efforts would assist her husband in his criminal scheme. *See United States v. Gerstein,* 104 F.3d 973, 980–81 (7th Cir.1997) (nature of employees' acts in creating false documents demonstrated that they "had *first-hand knowledge* that they were involved in criminal activity" and were thus criminally responsible participants under § 3B1.1); *United States v. Bush,* 79 F.3d 64, 67 (7th Cir.1996) (wife who filled out fraudulent worker's compensation claim form at defendant's request was criminally responsible participant). Just as Lopez was charged in Count 4 for having written a false gift letter, Sanchez too could have been charged with making a false statement to a financial institution under 18 U.S.C. § 1014. Accordingly, the district court's implicit finding that Sanchez was a criminally responsible participant whom Mandel supervised could not be clearly erroneous.

In any event, Mandel's argument about Sanchez is a red herring because the district court found that Mandel controlled one other participant: Stack. This finding alone was a sufficient basis for the § 3B1.1(c) adjustment; the court did not need to find that Mandel *also* directed his wife in order to impose the adjustment. *See Michalek,* 54 F.3d at 333–34 (finding that defendant's supervision of one other participant was a sufficient basis for § 3B1.1(c) adjustment).

■■ The government correctly points out that, by failing in his appellate brief to address the district court's finding that he directed Stack, Mandel has waived any argument that that finding was clearly erroneous. *See Washington v. Indiana High Sch. Athletic Ass'n,* 181 F.3d 840, 846

n. 9 (7th Cir.), *cert. denied,* 528 U.S. 1046, 120 S.Ct. 579, 145 L.Ed.2d 482 (1999). Even if Mandel had properly preserved the issue, however, the district court's finding that Mandel's direction of Stack justified the § 3B1.1(c) adjustment was not clearly erroneous. *See Matthews,* 222 F.3d at 308 (§ 3B1.1(c) adjustment not clearly erroneous where defendant exercised control over one participant). Stack, who actively participated in the fraud by acting as a straw buyer in two transactions and submitting false documentation in support of her mortgage applications, was criminally responsible for the offense, and thus qualified as a participant under § 3B1.1, comment. (n. 1.). *See Michalek,* 54 F.3d at 333 (district court did not clearly err in finding that woman who knowingly signed false documents and accepted and deposited checks from fraudulent sales of artwork was participant). Mandel admitted in the plea agreement and again at sentencing that he, along with Carcerano, participated in transactions using sham buyers—including but not limited to Stack—and fraudulent loan applications as part of the scheme to defraud.

In addition, the overall series of events demonstrates that Mandel was the organizer or leader of the scheme: he owned many of the properties; recruited straw buyers and others, including his wife, to write false gift letters and submit false loan documentation; spearheaded many of the transactions; and benefitted the most financially from the scheme. That he is named in nine of the ten counts in the indictment reflects the breadth and depth of his involvement in the fraudulent scheme, including the transactions in which Stack acted as a straw buyer. Based on the facts admitted in the plea agreement and at sentencing, the district court did not clearly err in rejecting Mandel's argument that Carcerano alone directed and controlled the other partici-

pants and finding that Mandel organized or led Stack, justifying the two-level adjustment under § 3B1.1(c). *See Matthews,* 222 F.3d at 308 (district court's choice between two permissible views of evidence was not clearly erroneous).

The district court's finding that Mandel directed at least one other participant in the criminal activity and therefore was an organizer or leader under § 3B1.1(c) was not clearly erroneous. Accordingly, the judgment of the district court is

AFFIRMED.