UNITED STATES of America,
Plaintiff–Appellee,

v.

Hermilyn STRONG, Defendant–
Appellant.

No. 01–3920.

United States Court of Appeals,
Seventh Circuit.

Argued July 10, 2002.

Decided July 24, 2002.

Before COFFEY, KANNE, and
ROVNER, Circuit Judges.

## ORDER

In January 2000, Hermilyn Strong
pleaded guilty to one count of making false
statements in a HUD-insured loan applica-
tion, 18 U.S.C. § 1010, one count of fraud-
ulent use of a social security number, 42
U.S.C. § 408(a)(7)(B), and one count of
bankruptcy fraud, 18 U.S.C. § 157. The
district court sentenced her to concurrent
terms of imprisonment ranging from 24 to
60 months. On appeal Strong contends
that the district court erred in imposing a
two-point upward adjustment under
U.S.S.G. § 3B1.1(c) for her aggravating
role in the offense. We affirm.

## I.

Throughout the 1990s, Strong engaged
in various frauds to purchase real estate in
Illinois and Wisconsin. Strong financed
the properties by obtaining loans and
mortgages using falsified personal data
such as name, occupation, income, and so-
cial security number. Strong leased the
multi-unit properties, and lived in the sin-
gle-family dwellings. She collected rents
from her tenants, but failed to pay taxes,
mortgages, or utilities on any of the prop-
erties. When creditors eventually threat-
ened to foreclose, Strong halted the fore-
closures by either filing for bankruptcy or
selling the property to herself under an
assumed name. To prevent such foreclo-
sures Strong filed for bankruptcy a total of
21 times.

In August 1999, a federal grand jury
returned a nineteen-count second su-

perseding indictment charging in Count 18 that Strong and co-defendant Kevin Holliday conspired to commit bankruptcy fraud to forestall the foreclosure of a house Holliday owned in Bollingbrook, Illinois, and in Count 19 that the pair made false statements in a HUD-insured loan application for the financing of that home. Counts 1 through 17 charged Strong with criminal activity that did not implicate Holliday, but involved her financing of other properties through fraudulent loan applications and her repeated use of fraudulent bankruptcy filings to forestall inevitable foreclosures. Holliday pleaded guilty to counts 18 and 19 and testified against Strong when she proceeded to trial on the entire indictment.

Holliday testified that he met Strong in late 1992 or early 1993 while doing construction at a building that she managed. Within a few weeks the two began a steady dating relationship that lasted until 1998. In late 1993, Strong told Holliday that she would help him buy a house because he lacked the credit to obtain a mortgage. Strong instructed Holliday to rent an apartment using a false social security number to establish credit. She then took Holliday to the south side of Chicago to obtain a false birth certificate and social security number, and to acquire a new driver's license that would reflect the false information. Holliday leased an apartment using this false documentation, and he regularly paid rent to establish his credit rating.

After approximately nine months Strong and Holliday began searching for houses to purchase, and they ultimately selected one in Bolingbrook. Strong prepared the HUD-insured mortgage application and all supporting documentation, including false W–2 forms, false paycheck stubs, and false employment verification. Holliday signed the forms that Strong prepared, and received the HUD-insured loan to purchase the Bolingbrook property. After closing on the property in October 1994, Holliday moved into the house, made two mortgage payments, and then stopped paying on the mortgage.

A year later Holliday began receiving letters threatening foreclosure. The threats culminated in an August 1996 notice of foreclosure. Strong advised Holliday to file for bankruptcy to obtain a stay and forestall the foreclosure sale, and because Holliday was unfamiliar with bankruptcy filings, Strong prepared the necessary forms on his behalf and supplied the court with false information, including a false social security number. The bankruptcy petition was ultimately dismissed, but Strong helped Holliday file a second petition using more fraudulent forms she prepared.

When Holliday was forced to move from his Bolingbrook property, Strong helped him rent a townhouse by supplying false information on the rental application and paying the first month's rent. Holliday lived there for almost half a year without making any subsequent rent payments. Meanwhile, Strong helped him look for another property to buy. She assisted him with mortgage applications on three properties, one in Milwaukee and two in Bolingbrook. Strong provided Holliday with applications containing fraudulent representations including false personal information, false social security numbers, false income statements, and false employment histories. All three mortgage applications were denied.

After Holliday's testimony, Strong decided to end the trial and pleaded guilty to three of the counts that did not involve Holliday's participation. In her plea agreement she refused to admit to any of the fraud committed with Holliday, and at sentencing argued that she was neither an organizer nor a leader of Holliday's offense conduct, and therefore should not receive a

two-level upward adjustment under § 3B1.1(c). Although Strong argued that the conduct was "jointly conceived and undertaken," the government countered that Holliday's trial testimony established that "he was completely and utterly directed by Hermilyn Strong." The district court agreed with the government's characterization and imposed the adjustment, thereby increasing Strong's total offense level by two points. This appeal follows.

## II.

We review a district court's factual determination that a defendant was an organizer or leader for clear error. *See United States v. Matthews*, 222 F.3d 305, 307 (7th Cir.2000). Under § 3B1.1(c) a court may impose a two-level upward adjustment if the defendant was an "organizer, leader, manager, or supervisor" of at least one other participant of the offense. *See* U.S.S.G. § 3B1.1, comment. (n. 2). The guidelines provide seven factors courts may consider in determining whether a defendant falls within any of these categories: (1) the exercise of decision making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices: (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, comment. (n.4). None of these factors is essential in determining whether the adjustment applies, nor must a court assign equal weight to each factor. *See United States v. Bush*, 79 F.3d 64, 67 (7th Cir.1996). Instead, the district court must evaluate the factors in light of the guidelines' intent to punish with greater severity those with greater responsibility for the crime, namely the leaders and organizers of the criminal activity. *See United States v. Sierra*, 188 F.3d 798, 804

(7th Cir.1999); *United States v. Mustread*, 42 F.3d 1097, 1104 n. 3 (7th Cir.1994) (ultimate question is what relative role defendant played).

Strong argues that the district court erred because she never exercised any control over Holliday. According to her account, she merely suggested that Holliday commit the loan and bankruptcy frauds, and was doing her boyfriend a favor when he required her assistance. *See* § 3B1.1, comment. (n. 4) (adjustment does not apply to a defendant who "merely suggests committing the offense"). She claims to have done nothing more than to play an equal role in an offense from which she derived no benefit, and therefore the district court erred when it concluded that she was the leader and organizer of Holliday's fraudulent activities.

But the record more than amply supports a finding that Strong was the organizer of the criminal activity in which Holliday participated. Although Strong never claimed the "right to a larger share of the fruits of the crime," § 3B1.1, comment. (n.4), that fact alone does not prove that the district court clearly erred in concluding that the two-point adjustment was warranted. *See Bush*, 79 F.3d at 67 (no one factor is essential to the application of § 3B1.1). According to Holliday's testimony, Strong not only suggested committing the offense conduct, but she also significantly facilitated commission of the various criminal activities. Strong provided Holliday with a false birth certificate and social security number. She completed all of his loan application forms and decided what falsified supporting documentation he needed. When creditors threatened foreclosure on Holliday's mortgage, she instructed him to file for bankruptcy and prepared all the necessary paperwork on his behalf. Strong's degree of participation in planning and organizing the offense far outweighed Holliday's. Strong

made all the decisions and preparations, while Holliday merely signed his name to documents when Strong instructed him to do so. Without Strong's substantial organizing, planning, and direction, Holliday could never have committed the fraudulent activity for which he was convicted. Given the overwhelming evidence of Strong's orchestrating role in the offense conduct, the district court did not clearly err by imposing the two-point upward adjustment to Strong's offense level. *See, e.g., United States v. Magana,* 118 F.3d 1173, 1203–05 (7th Cir.1997) (§ 3B1.1 adjustment warranted in light of testimony that the conconspirators received direction from the defendant and defendant's failure to contradict relevant findings in the PSR); *United States v. Michalek,* 54 F.3d 325, 334 (7th Cir.1995) (§ 3B1.1(c) adjustment properly applied to defendant who consistently directed his wife's activities in connection with bankruptcy fraud).

AFFIRMED.